[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a quiet title action brought by Robert B. Berger, Frank G. Santy and Edward J. McGuire against the defendants, Arthur L. Fitzgerald, Jr., Arthur L. Fitzgerald III, Shamrock Realty Co., Safety Fund National Bank and the Town of Enfield. This case involves the title to 4.465 acres of land located on Hazard Avenue in the town of Enfield. Prior to December 17, 1993, Arthur L. Fitzgerald, Jr. (the defendant) was the owner of five lots on Hazard Avenue in Enfield. The five lots were created by a subdivision plan which was approved in 1979 by the Enfield Planning Commission. The five lots were described as lots 1, 2, 3, 4, and 5 on a map or plan entitled "subdivision plan prepared for Norman H. Trudeau . . . ." Enfield town maps have subsequently described the five lots as lots 119, 120, 121, 122, and 123, and also as lots 247, 248, 249, 250, and 251.
From 1979 to 1991, no improvements were made to the subdivision lots. Since no improvements had been completed, the Enfield Planning Commission voted to declare the subdivision null and void on March 7, 1991. The defendant received the return of his bond CT Page 13975 money in the amount of $32, 676.71, which had been given to the town as a condition for the subdivision approval. On March 15, 1991, a legal notice regarding the expiration of the subdivision plan was published in a local newspaper. The subdivision map was stamped as expired on May 2, 1991.
The defendant failed to pay the real estate taxes levied against the lots described by the assessor as numbers 247, 248, 249, 250 and 251 Hazard Avenue. The unpaid taxes ran from the assessment years of October 1, 1986 through October 1, 1990. On August 14, 1991, the town of Enfield published a notice of sale of land for taxes in which it declared it would sell various parcels of land within the town of Enfield. The notice contained forty-six parcels of land to be sold at auction, which was scheduled for October 23, 1991 at the Enfield Town Hall. Two parcels of land, number 9 and 10 on the notice of sale, were listed in the name of the defendant. These two parcels were item 9, described on the assessor's map 74 as lot 49 Hazard Avenue, and item 10, described on the assessor's map 74 as lot 118 Hazard Avenue. The five lots which are the subject matter of this action, were described in the same notice as items 35 36, 37, 38, and 39 on the notice of sale. These five lots, items 35 through 39 on the notice of sale were described as parcels in the name of Shamrock Realty, and referred to the assessor's map 74 for the description of the five lots as lots 247, 248, 249, 250, and 251 Hazard Avenue. The proposed sale of the lots listed in the notice published August 14, 1991, was canceled by the town. Although the defendant had received a notice of the sale dated August 14, 1991, he was not aware of the cancellation of the sale by the town.
Approximately one year later, on October 5, 1992, the town published a second notice of sale of land in which it declared that it would sell twenty-five parcels of land at public auction to satisfy unpaid taxes and charges. Item 20 on the October 5, 1992 notice stated that the property in the name of Shamrock Realty Company assessed from October 1, 1986 through October 1, 1991, would be sold to satisfy unpaid taxes in the amount $44,999.84, plus all the charges accrued thereon. Item 20 described the property as being on assessor's map 74, lot 251 Hazard Avenue. There was no mention of lots 247, 248, 249, and 250 Hazard Avenue. An auction pursuant to the October 5, 1992 notice was held on December 14, 1992. The property listed as Item 20 was purchased at the auction by Edward J. McGuire, Trustee. The price paid by McGuire to the town was $79,170.22. McGuire subsequently transferred title to the present plaintiffs. The notice of CT Page 13976 purchase at tax sale recorded by McGuire on June 15, 1993, described the property as lots 1, 2, 3, 4, and 5 on a map or plan entitled "subdivision plan prepared for Norman H. Trudeau . . . ." The deed references contained in the December 17, 1993 tax collector's deed to McGuire did not refer to either Shamrock Realty Company or Arthur L. Fitzgerald, Jr. as prior owners.
The defendant claims that the town only conveyed former subdivision lot 251 by its tax sale and that his transferee, Arthur L. Fitzgerald III, is the rightful owner of lots 247 through 250. The 1991 assessor's card (Defendant's Exhibit 4) listed the subject property as lot 251 on Hazard Avenue containing 4.465 acres. The card reflected that lot 251 was a combination of lots 1, 2, 3, 4, and 5. Based on this information, the tax collector identified the property in the tax collector's notice of sale as lot 251 in lieu of the previous described notice of lots 247 through 251, inclusive. The significance of the information concerning the expiration of the subdivision is that sometime after the Enfield Planning Commission declared the subdivision null and void in the spring of 1991, the assessor changed the designation of lots 247 through 251 to one parcel of land known as lot 251.
Subsequent to the tax sale of lot 251 to Edward McGuire, the defendant conveyed former lots 247, 248, 249, and 250 to Arthur L. Fitzgerald III on June 30, 1994.
The defendant claims that the tax deed to McGuire is invalid because of two errors in the procedure followed by the tax collector. The first error claimed is that the description used by the tax collector was incorrect to convey the deed to lots 247 through 250. Second, the defendant claims that the tax deed that was recorded by McGuire on December 17, 1993, was not lodged with the town clerk within a week of the sale pursuant to General Statutes § 12-157. In fact, the tax deed was lodged with the town clerk on December 21, 1992, as required by § 12-157. However, because McGuire objected to the deed's statement that it was subject to liens rather than being sold free and clear of all liens, the town clerk substituted a correcting deed for the original. We do not find this action to be a violation of § 12-157, which would cause the tax deed to be void. See General Statutes § 12-159. Vakalis v. Tolland, judicial district of Tolland, docket no. CV93-0052199 (1996).
We agree with the plaintiffs that the sole question in this case is whether the tax collector's notice of sale dated October 5, CT Page 13977 1992, was adequate to provide notice to interested persons of what property was being sold by the tax collector on December 14, 1992. See General Statutes § 12-157, entitled "method of selling real estate for taxes."
"If the property goes unredeemed, the tax sale purchaser is issued a tax deed and the owner loses all interest in the property. This result will often be very harsh, as the owner will lose his property for taxes equalling only a small fraction of its true value, while the tax sale purchaser will reap a decided windfall." Note, The Constitutionality of Notice of Publication in Tax SaleProceedings, 84 Yale L.J. 1505, 1505-6 (1975). For these reasons, compliance with statutory procedures is a prerequisite to any valid statutory action. Aurora v. Zoning Board of Appeals,153 Conn. 623, 625, 220 A.2d 277 (1966). "Generally, where notification is required for some definitive purpose, and where valuable interests of the addressee are being destroyed, strict adherence to the prescribed procedure is required." (Citation omitted.) GlenChaffer, Inc. v. Kennedy, 37 Conn. Sup. 654, 658, 433 A.2d 1018
(1981).
When we analyze the facts in this case, it becomes clear that there was confusion as to how the property being sold at auction was described. The five lots auctioned at the tax sale were initially described as lots 1, 2, 3, 4, and 5 on a subdivision map. Subsequently, the assessor identified the same five lots as lots 119, 120, 121, 122, and 123 or lots 247, 248, 249, 250 and 251. In the first try at auctioning the five lots at the tax sale scheduled for October 23, 1991, the lots were described as items 35, 36, 37, 38, and 39 with reference to an assessor's map showing lots 247, 248, 249, 250, and 251. On the notice of tax sale published one year later, the description of the lots referred only to Lot 251 Hazard Avenue. No mention was made of lots 247, 248, 249, and 250 Hazard Avenue. To add to the confusion, the tax collector described the property contained in the tax collector's deed to McGuire, trustee, not as Lot 251 Hazard Avenue, as set forth in the notice, but rather, as lots 1, 2, 3, 4, and 5 on a subdivision map.
Where such confusion existed in the description of what was being auctioned off on October 5, 1992, we find it difficult under such conditions to justify taking away a person's property rights. In order to deprive the defendant of his title to lots 1, 2, 3, and 4 on the subdivision map, the notice given to all interested parties, including the defendant, must have described the property with particular accuracy. It should not have been necessary for CT Page 13978 example, as did McGuire and an interested realtor, to do an investigation of the land records and the assessor's records to find out what property was included in the notice of tax sale published on October 5, 1992. We agree with the defendant that only former subdivision lot 251 was properly described in the publication of the tax sale. The description of former subdivision lot 251 alone could not have been interpreted to include former subdivision lots 247 through 250. The only proper sale that occurred on December 14, 1992 was the auction of former subdivision lot 251 Hazard Avenue.
We conclude that Arthur L. Fitzgerald III is the owner of the title to the land comprising former subdivision lots 247, 248, 249, and 250 Hazard Avenue, and that Robert B. Berger, Frank G. Santy, and Edward J. McGuire are the owners of the title to the land comprising former subdivision lot 251 Hazard Avenue.
As agreed to by all parties, this memorandum of decision applies only to the first count of the plaintiffs' complaint. Count two remains to be resolved by the parties. A further hearing regarding count two, if necessary, will be scheduled by the court.
Arnold W. Aronson, J. Judge Trial Referee